IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL PROPERTIES TRUST, INC.,<br><br>Defendant. | C.A. No. |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 57 and Title 28 U.S.C. §§ 2201 and 2202, Plaintiff Zurich American Insurance Company files its Original Complaint for Declaratory Judgment.

**THE NATURE OF THE ACTION**

1. This is an action for declaratory judgment involving a claim for coverage under a commercial property insurance policy for losses arising out of a single Flood event at Norwood Hospital in Norwood, Massachusetts on June 28, 2020 (the "Property"). At the time of the loss, Medical Properties Trust, Inc. ("MPT") owned the Property and leased it to a third-party. The Property was insured under a first party property policy issued by Plaintiff Zurich American Insurance Company ("Zurich"). In this action, Zurich seeks declarations determining the Parties' rights and obligations under the policy it issued to MPT (the "Zurich Policy" or "Policy") relating to the June 28, 2020 Flood event.

2. Specifically, Zurich seeks declarations that:

  (a)  MPT's total recovery cannot exceed the sublimit applicable to Flood;

  (b)  There is no coverage for MPT's Increased Cost of Coverage claim; and

  (c)  MPT cannot recover under the MPT Policy for systems which were not damaged during the Flood.

## THE PARTIES

3. Plaintiff Zurich American Insurance Company is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.

4. Defendant Medical Properties Trust, Inc. is a Maryland Corporation with its principal place of business at 1000 Urban Center Drive, Suite 501, Birmingham, AL 35242 that can be served with process by serving its registered agent, CT Corporation, 155 Federal St., Suite 700, Boston, MA 02110.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 (a)(1) and (2), because Zurich and MPT are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this district.

## THE ZURICH POLICY

7. Zurich issued commercial property insurance policy number PPR0281010-03 to Medical Properties Trust, Inc. insuring various locations, including the Property. The Zurich Policy covers the period of April 23, 2020 through April 23, 2021. A true and correct copy of the Policy is attached hereto as **Exhibit A.**

8. The Policy insures against direct physical loss or damage caused by a covered cause of loss.

9. Flood loss is a "Described Cause of Loss" under the Policy:

> 5.03.    DESCRIBED CAUSES OF LOSS
>
> 5.03.03.   **FLOOD**
>
> The Company will pay for direct physical loss of or damage to Covered Property, Time Element loss and Special Coverages loss as provided by this Policy, if such loss or damage is caused by Flood regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, ensuing physical loss or damage by fire, explosion, theft, vandalism or sprinkler leakage will not be considered to be loss by Flood within the terms and conditions of this Policy.

**Ex. A**, at A-052.

10. The Policy contains a $100,000,000 sublimit for claims arising out of Flood. **Ex. A**, at A-018. This sublimit is separate and apart from other limits within the Policy. **Ex. A**, at A-015 – A-018 ("The limit of Liability we show for a coverage part is the maximum amount we will pay for the coverage part. Sublimits within a coverage part may reduce the amount payable under a coverage part. . . . $100,000,000 FLOOD in the Annual Aggregate . . . .").

11. The Policy language specifically states that the $100,000,000 sublimit is applicable to Flood acts as a collective ceiling for all Flood damage. **Ex. A**, at A-015 ("The most the Company will pay in an **Occurrence** caused by a **Described Cause of Loss** is the Limit of Liability for that **Described Cause of Loss**.").

12. The Policy defines Flood as "[a] general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by: . . . The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not . . ." **Ex. A**, at A-068.

## THE JUNE 28, 2020 FLOOD EVENT

13. The Property consists of multiple connected buildings, including the Draper Building and the Lorusso Building, which are joined by common corridors. The Draper Building is 5-stories in height, exclusive of the basement level, and the Lorusso Building stands 4-stories tall with a separate basement. Upon information and belief, the Draper Building was built in the 1962 and the Lorusso Building was built in the late 1980s or early 1990s.

14. On June 28, 2020, the Property was damaged by Flood as a result of torrential rain that fell in the area.

15. Rainwater accumulated in areas surrounding the Property, eventually flooding the basement areas of the Lorusso and Draper Buildings. Water was reported to have reached 4' to 5' in the Lorusso Building basement and approximately 2' in the Draper Building basement.

16. Flood water damaged the main electrical switchgear and backup generators causing the Property to lose power.

17. Flood water also entered through other openings on the ground floor and spread throughout the interior of the Property.

18. Additional Flood water accumulated on the roof and the second floor courtyard of the Lorusso Building.

19. Unable to handle the accumulation of surface water, storm drains failed and Flood water entered the Lorusso Building from the roof and second floor courtyard.

## MPT'S CLAIM UNDER THE ZURICH POLICY

20. MPT notified Zurich of significant Flood damage to the Property on or about June 29, 2020 (the "Claim").

21. Zurich promptly investigated and adjusted the reported Claim. Zurich hired several consultants to assist with investigating the Claim.

22.     MPT also retained consultants to value the Claim on its behalf.

23.     Zurich's consultants were provided access to the Property in order to inspect the damage.

24.     On or about February 5, 2021, Zurich received a proof of loss for the Claim totaling over $266 million.

25.     Of that amount, MPT claims $177 million to repair the Property. MPT divides its claim between what it terms "Flood" damage ($83.7 million) and purported "storm" damage ($93.9 million).

26.     Upon information and belief, MPT is classifying damage arising from surface water infiltration from the roof and courtyard as "storm" damage. This purported distinction between "Flood" damage and "storm" damage is unsupported by the Policy and appears to be an improper attempt to bypass the $100,000,000 Flood limit.

27.     MPT also claims $50 million for what it asserts are the requirements of building codes under the Increased Cost of Construction coverage in the Policy. The Increased Cost of Construction coverage has a $50,000,000 sublimit of liability and would be included within the $100,000,000 Flood sublimit of liability.

28.     Despite its original representations that it intended to repair water damage to the Property, on June 22, 2021 MPT stated its intention to build an entirely new building complex.

29.     The scope of work presented within the Claim includes areas of the buildings and building systems that were not damaged during the June 28, 2020 Flood Event.

30.     The explanations provided by MPT's consultants regarding the stated basis for the repair, removal and replacement of areas of the buildings and building systems that did not sustain water damage have evolved over time and remain unclear.

31. Upon information and belief, MPT, or others acting on MPT's behalf, have sought modified zoning to permit the construction of a new, larger, and more modern, complex.

32. In early February 2021, the Town of Norwood approved a new zoning district for the area in which the Property currently sits. Local press coverage of the zoning change highlighted that the amendment would lay the groundwork for a complete rebuild and modernization of the Property.

33. Additionally, MPT recently produced a "Reactivation" schedule for the Property which contemplates demolition of the existing buildings and reconstruction of a new modern facility. The "Reactivation" schedule contemplates completion of the new building complex in September 2023.

34. While MPT, as the Property's owner, may choose to invest in modernization of the Property it cannot do so under the guise of a Property Insurance Claim for Flood damage.

35. Zurich's basis of disagreement with MPT's claim of $221,033,890 net of the Policy's Increase Cost of Construction and Flood sublimits of liability include the following reasons:

> a. It relies upon a false distinction between "Flood" and "storm" damage – all damage caused by the "rapid accumulation or runoff of surface waters" in the June 28, 2020 Flood Event falls within the $100,000,000 Flood Limit; and,
>
> b. It includes work removing or replacing Property sections and components that were not damaged during the Flood including electrical and HVAC systems.

36. Zurich has made significant payments to MPT, totaling $27.5 million, relating to the damage caused by the Flood. Upon information and belief, MPT has not used this money in repairing or rebuilding the Property.

37. Since May 2021, MPT has promised a revised building claim but none has been presented to date.

38. Based on Zurich's analyses of the MPT's Claim presented to date, no additional funds are owed at this time.

## COUNT I
### (Request for Declaratory Judgment – Application Of Sublimit For Flood)

39. Plaintiffs incorporate Paragraphs 1 through 38 as if set forth fully herein.

40. The Policy provides coverage for Flood, which is defined in the Policy as including "A general and temporary condition of partial or complete inundation of normally dry land area or structure(s) caused by the unusual and rapid accumulation or runoff of surface waters." **Ex. A,** at A-068.

41. The Policy contains a sublimit for Flood of $100 million in the annual aggregate, which is further stated as Zurich's maximum amount payable that it will pay during the policy year regardless of the number of Locations, Coverages, or Occurrences involved. **Ex. A,** at A-015-A - 018.

42. In an effort to avoid the application of the sublimit applicable to Flood, MPT has attempted to recharacterize water damage caused by Flood waters emanating from the roof and the second floor Lorusso Courtyard as "storm" damage.

43. All of the water damage, including damage to the upper floors of the Property caused by surface water accumulating on the roof, is Flood damage.

44. Accordingly, all damage caused by water, regardless of location within the Property buildings, is subject to the Policy's $100 million sublimit applicable to Flood.

45. Zurich respectfully requests a declaration that MPT's recovery under the Policy cannot exceed the Policy's $100 million sublimit applicable to Flood.

## COUNT II
### (Request for Declaratory Judgment –
### Prerequisite(s) For Increased Cost of Construction Coverage Have Not Been Met)

46. Plaintiffs incorporate Paragraphs 1 through 38 as if set forth fully herein.

47. MPT seeks $50,000,000 for Increased Cost of Construction Coverage.

48. Under the plain language of the Increased Cost of Construction Coverage, amounts claimed under the that coverage (subject to all other Policy requirements) must be: (1) reasonable and necessary (5.02.14.01.); (2) actually "incurred" (5.02.14.01.); (3) incurred to "satisfy the minimum requirements" of applicable codes; (id.); (4) incurred to meet codes in force on the date of covered direct physical loss or damage (5.02.14.01.01.); and (5) incurred for the enforcement of codes as "a direct result of" covered physical loss or damage (5.02.14.01.02.). **Ex. A**, at A-040 – A-041.

49. Here, MPT has not completed any significant repair work at the Property or identified any incurred costs payable under the Increased Cost of Construction Coverage.

50. Upon information and belief, the claimed $50 million for Increased Cost of Construction includes amounts that do not meet Policy requirements including, without limitation, because they are not reasonable and necessary in responding to the Flood damage and, instead, reflect attempts to utilize the Flood Event to fund modernization of the Property.

51. Furthermore, MPT has not incurred any costs covered under the Increased Cost of Construction Coverage, therefore MPT it is not entitled to recovery.

52. As a result, MPT's claim for $50 million for damages pursuant to the Increased Cost of Construction provided under the Policy is speculative and premature, and any such claimed costs are not due and owing.

53. Further, any costs incurred under the Increased Cost of Construction Coverage is subject to the annual aggregate Flood limit for the reasons set forth in Count I.

54. Zurich requests a declaration that MPT is not entitled to recovery under the Increased Cost of Construction Coverage based on the claim as presented and any such costs which may be actually incurred in the future is subject to the $100 million Flood sublimit.

### COUNT III
### (Request for Declaratory Judgment –
### Claimed Damage Not Caused By the Flood Is Precluded)

55. Plaintiffs incorporate Paragraphs 1 through 38 as if set forth fully herein.

56. The Policy insures against direct physical loss or damage caused by a covered cause of loss.

57. Further, the Policy requires MPT to protect its property from further damage following a loss and to mitigate its losses.

58. MPT's claim includes the cost to repair or replace building systems that did not sustain damage during the Flood event.

59. Certain systems that are included in MPT's claim are admitted by MPT not to function because the systems have not been operated since June 2020.

60. Further, MPT failed to take reasonable steps to prevent damage to property arising from disuse or idleness.

61. Claimed damages reflecting MPT's failure to mitigate are not recoverable under the Policy.

62. Zurich requests a declaration that MPT is barred from recovering under the Policy for building systems that did not sustain water damage and damages sought due to MPT's failure to mitigate its losses.

### PRAYER FOR RELIEF

WHEREFORE, Zurich prays that MPT be cited to appear and answer, and that Zurich be granted judgment against MPT that:

    (a)    MPT's total recovery cannot exceed the sublimit applicable to Flood;

    (b)    There is no coverage for MPT's Increased Cost of Coverage claim;

    (c)    MPT cannot recover under the MPT Policy for systems which were not damaged during the Flood; and

    (d)    any other and further relief, at law or equity, to which it may justly entitled.


Respectfully submitted,

ZURICH AMERICAN
INSURANCE COMPANY

By their attorney,


       */s/ Michael Menapace*
Michael Menapace, Esq. (BBO 568841)
Wiggin and Dana, LLP
20 Church Street
Hartford, Connecticut 06103
Telephone: (860) 297-3733
Fax (860) 297-3799
E-mail:  mmenapace@wiggin.com

Date: October 4, 2021

## CERTIFICATE OF SERVICE

     I hereby certify that on October 4, 2021, a copy of the foregoing Plaintiff's Original Complaint for Declaratory Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                     */s/ Michael Menapace*
                                                     Michael Menapace

21416\65\4848-5524-3261.v1