UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,   )<br>  )<br>   Plaintiff and Counterclaim-Defendant,   )<br>  )<br>v.   )<br>  )<br>MEDICAL PROPERTIES TRUST, INC.,   )<br>  )<br>   Defendant and Counterclaim-Plaintiff.   ) | Case No. 1:21-cv-11621 |

### MPT'S UNOPPOSED SUBMISSION IN SUPPORT OF CERTIFICATION OF CONTROLLING QUESTION OF LAW PURSUANT TO 28 U.S.C. § 1292(b)

In accordance with the Court's request during the August 10, 2022 hearing on the parties' cross-motions for partial summary judgment, the parties have conferred and agree that, if the Court issues an order granting plaintiff Zurich's cross-motion and denying MPT's cross-motion, such order should be certified for immediate appeal to the United States Court of Appeals for the First Circuit, in accordance with 28 U.S.C. § 1292(b).[1]  *See* Transcript of August 10, 2022 Hearing (**Exhibit A** hereto), at pp. 42-45 and 55-59.  Accordingly, defendant Medical Properties Trust, Inc. ("MPT") respectfully submits this unopposed memorandum setting forth the reasons why MPT believes an interlocutory appeal is appropriate under § 1292(b).

The key legal issue presented by the parties' cross-motions is whether rainwater that lands and accumulates on a parapet roof one or more stories above the ground is "surface water," as that term has been defined by the Massachusetts Supreme Judicial Court.  The SJC has defined "surface water" as "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the

---

[1] American Guarantee and Liability Insurance Company and Zurich American Insurance Company, defendants in the related matter of *Steward Health Care System LLC v. American Guarantee and Liability Ins. Co and Zurich Am. Ins. Co*., No. 21-cv-11902-PBS, also do not oppose a similar course of action in that matter as is proposed here by MPT.

surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 354 (Mass. 2012).  The SJC also has emphasized that "surface water" must be "diffused over the surface of the ground," "remain[] in such diffused state," and "follow[] no defined course or channel . . . ." *Id.*

MPT has argued in its briefs that the rainwater that landed on the Norwood Hospital roofs exhibited neither of the SJC's defining characteristics of "surface water."  Specifically, MPT has argued that the rainwater that damaged upper floors of the Hospital was never (1) "on the surface of the earth" or "the ground," or (2) "naturally spread[ing] over the ground" in a "diffused state."  Accordingly, MPT has contended, it cannot be "surface water," as defined by the SJC, and the damage caused by such water is thus not subject to the Policy's $100 million Flood sublimit.

In response, Zurich has argued that "surface water" includes water accumulating on a parapet roof, such as the Norwood Hospital roofs, which act as the "surface of the earth" at that point.  In so arguing, Zurich relies upon the First Circuit's decision in *Fidelity Cooperative Bank v. Nova Casualty Co.*, 726 F.3d 31 (1st Cir. 2013), as creating binding precedent on the meaning of "surface water" under Massachusetts law.  In *Nova* – which involved damage caused by water infiltrating through skylights on a parapet roof after roof drains overflowed – the First Circuit cited to Massachusetts Supreme Judicial Court cases addressing "surface water" and stated that, based on that precedent, it saw "no reason to disturb the district court's finding that the 'ponded' water on the roof of the property here was 'surface water'." *Id.* at 40.

During the August 10 hearing, the Court expressed the view that it might be bound to rule in Zurich's favor because of the First Circuit's decision in *Nova*, even if it saw potential merit in MPT's arguments that, on the undisputed facts, the rainwater on the Hospital's roofs did not fit within the SJC's definition of "surface water."  *See* **Ex. A** at pp. 26-27, 31, 41-45.  The Court

suggested, however, that if it did so conclude, and thus ruled in favor of Zurich, the circumstances might be appropriate for certification of its order for immediate appeal to the First Circuit under 28 U.S.C. § 1292(b). *Id*.  The Court requested that the parties file, on or before September 6, 2022, submissions addressing whether the criteria guiding a district court's discretion under Section 1292(b) are satisfied here, and identifying issues raised by the pleadings that must be addressed irrespective of the Court's ruling on the "surface water" issue, and which therefore could be litigated in the district court even as an interlocutory appeal proceeds, advancing the ultimate disposition of this action. *Id*. at 55-59.

The parties have conferred and agree that the Court's ruling on these cross-motions <u>is</u> appropriate for certification under §1292(b) because it necessarily "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that an immediate appeal from the Court's order will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Accordingly, if the Court concludes that *Nova* constrains it to grant Zurich's cross-motion and deny MPT's cross-motion, MPT requests that the Court's order also be certified for immediate appeal to the First Circuit under Section 1292(b).

The parties have further agreed that, while the interlocutory appeal proceeds, most discovery and other proceedings should be stayed pending the appellate decision.  There are, however, certain issues that can be addressed in the district court through discovery and other proceedings while the appeal proceeds.  Specifically, the parties agree that they should be permitted to take fact discovery from one another concerning the nature and extent of the damage to the Hospital that MPT claims was sustained because of the June 28, 2020 storm and the scope of work (including its cost) required to repair, rebuild or replace such damaged property.  Such fact evidence will be relevant to MPT's proof of its claimed damages (and Zurich's rebuttal of

same), proof it must be prepared to make in this action whether the $100 million "Flood" sublimit in the Policy applies or not. In addition, discovery can proceed on the insureds' claims that the insurers acted in bad faith.[2] There may be additional issues as to which the parties can proceed with discovery and other proceedings during the appellate process. The parties will continue to confer regarding what other matters should be exempt from the stay of these proceedings and, if the Court so desires, will submit a revised scheduling order for the Court's consideration that addresses that topic.

## DISCUSSION

28 U.S.C. § 1292(b) establishes three criteria that must be satisfied in determining whether a district court order should be certified for interlocutory appeal to the court of appeals. An order is appealable under § 1292(b) if the District Court is of the opinion that (1) the order "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three requirements are met here.

**I.     The Issue Presented by the Cross-Motions Is a Controlling Question of Law**

In describing what constitutes a "controlling question of law" for purposes of § 1292(b), this Court has previously said:

> A controlling question of law usually involves "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" rather than an application of law to the facts. *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). "[W]hat the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of pure law, matters the court of appeals can decide quickly and cleanly without having to study the record."

---

[2] Although, Zurich reserves the right to object to discovery that it contends is affected by the Court's Flood sublimit ruling.

> *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (internal quotation marks omitted).

*South Orange Chiropractic Ctr., LLC v. Cayan LLC*, 2016 U.S. Dist. LEXIS 70680, *4 (D. Mass. May 31, 2016) (Saris, C.J.). Those words perfectly describe the issue presented here, which is a pure question of law – *i.e.*, when the SJC defined "surface water" as water "that lie[s] or flow[s] on the surface of the earth and naturally spread[s] over the ground but do[es] not form a part of a natural watercourse or lake," did it mean to include rainwater that lands and accumulates on a parapet roof? The answer to that purely legal question will be dispositive of Count I of Zurich's Complaint and the questions presented on the parties' cross-motions.

This Court also has observed that "[q]uestions 'found to be controlling commonly involve the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial.'" *Id.* (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed. 1998)). As such, this element is closely tied to the requirement that immediate appeal would "materially advance the ultimate termination of the litigation." *Id.* "'A question of law may be deemed controlling if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.'" *Henderson v. Bank of N.Y. Mellon Corp.*, 2016 U.S. Dist. LEXIS 200796, *7 (D. Mass. Feb. 17, 2016) (Saris, C.J.) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996)). "Even if there is some possibility that a reversal on appeal would 'leave something of the case,' a question of law will still be 'controlling' if 'the scope of the case would be . . . significantly altered.'" *Id.* (quoting *Philip Morris, Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997)).

As discussed in greater detail in Section III, below, an immediate appeal of the "surface water" question would in fact "affect the further course of the litigation" and "significantly alter" the remaining scope of the case. How the rest of the case will be litigated, the nature of the proof

that must be adduced, and accordingly, the discovery that will be undertaken in aid of such proof, all will be determined by whether the Flood sublimit applies to damage caused by water intrusion from the roofs and upper floor courtyard.  Determination of this controlling question of law also will significantly impact the parties' prospects for settlement, and thus has the potential to eliminate the need for *any* further proceedings.

### II. There Is Substantial Ground for Difference of Opinion as to the Controlling Question of Law

In *Cayan*, 2016 U.S. Dist. LEXIS 70680, *5-6, this Court explained:

> There may be substantial ground for difference of opinion when an issue involves "one or more difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984).  For example, an interlocutory appeal might be appropriate when the circuits are divided and a court follows the minority view. *See Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990).  Another basis for interlocutory appeal is where the caselaw in the district courts nationwide is divided. *Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 182 (D. Mass. 2005) (finding substantial difference of opinion where the "case law to date demonstrates marked litigant confusion and disagreement")."

Here, the SJC has definitively defined "surface waters" for purposes of an insurance policy, but it has never had occasion to address whether rainwater that collects on a roof fits within its definition of "surface waters." *See* ECF # 38 at pp. 3-5; **Ex. A** at pp. 12-14, 31.  Nor has the Massachusetts Appeals Court.  As the Court recognized, based on its review of the Couch on Insurance treatise, there is a nationwide split of authorities on this question. *See* **Ex. A** at pp. 13-16, 46-47.  Both parties have cited decisions of appellate courts construing the governing law of those states on the issue, and the results have been split. *Id.*  And, as MPT contended during the August 10 hearing, Zurich's opinion regarding whether the Flood sublimit applies to the top-down water damage from the roofs has changed over the course of its adjustment of this claim. *See* **Ex. A** at pp. 49-50.

Clearly, there are substantial grounds for difference of opinion as to whether rainwater collecting on a roof is properly deemed to be "surface water" for purposes of an insurance policy.

Moreover, MPT contends there are also substantial grounds for difference of opinion regarding the significance of the First Circuit's decision in *Nova*. Did the Court of Appeals "hold" that rainwater on a parapet roof is "surface water" for purposes of Massachusetts law, as Zurich contends? Or was the surface water discussion in that case unnecessary and unconsidered dicta, as MPT contends? *See*, *e.g.*, **Ex. A** at pp. 27-37. MPT recognizes that, if the Court decides the cross-motions adversely to MPT because it considers *Nova* to be controlling, the Court will have concluded either that the First Circuit's determination not to disturb the district court's "surface water" determination was not dicta, or that it was sufficiently carefully considered dicta as to control here. For present purposes, however, MPT submits that in this case there is substantial ground for difference of opinion both regarding the pivotal "surface water" question itself, and as to whether *Nova* comprises a precedential determination of that issue under Massachusetts law.

### III.     Immediate Appeal May Materially Advance Termination of the Litigation

In *Oskoian v. Canuel*, 264 F.2d 591, 594 (1st Cir. 1959), the First Circuit emphasized that certification under § 1292(b) is particularly appropriate where resolving the appellate issue will "avoid protracted or expensive litigation." And as previously noted, this Court has held that certification of a controlling question is appropriate "if its resolution is quite likely to affect the further course of the litigation" and would "significantly alter" the remaining scope of the case. *Henderson*, 2016 U.S. Dist. LEXIS 200796 at *7. Such is the case here. As the parties explained when requesting leave to file the cross-motions, resolution of the "surface water" question presented by those motions will affect the nature and scope of discovery the parties will need to take from one another, and will dictate whether the parties require expert opinions regarding the

source of the water intrusion that resulted in each element of MPT's claimed loss for damaged property on the upper floors of the Hospital. Such "causation" proof will be highly fact intensive and the parties' expert opinions would have to address literally each individual item of damaged property on every upper floor of the Hospital. Discovery and expert disclosures on these issues will be lengthy and extremely expensive, not to mention the cost and time associated with trial.

It is thus clear that the ultimate resolution of the "surface water" question has significant implications for how the rest of the case would be litigated – in discovery, in expert opinions and at trial. But it is also likely that resolution of the "surface water" question would have significant implications for how the parties view the settlement value of the case, as Zurich counsel suggested at the August 10 hearing. MPT has claimed approximately $120 million in damage caused by top-down water intrusion through the Hospital's roofs, upper-floor courtyard and other sources that is above and beyond the more than $100 million of basement and ground floor damage that MPT concedes is capped by the Policy's Flood sublimit. If it is held that the Flood sublimit has no applicability to the top-down water damage from the roofs and upper-floor courtyard, Zurich will know that its settlement valuation must rise significantly to account for the additional $120 million MPT has claimed on account of such top-down water. And conversely, if it is held that the Flood sublimit does apply to any damage Zurich can prove was caused by water intrusion from the roofs and courtyard, MPT will have to adjust its settlement valuation downward accordingly. Getting clarity on this purely legal question is very likely to drive the parties much closer to a possible settlement; indeed, it seems highly unlikely the parties could ever settle this case without getting appellate court clarity on the "surface water" question – whether that is from the SJC (as MPT initially requested) or from the First Circuit. *See* **Ex. A** at pp. 57-58.

**CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, if the Court issues an order granting plaintiff Zurich's cross-motion and denying MPT's cross-motion, MPT requests that such order be certified for immediate appeal to the United States Court of Appeals for the First Circuit, in accordance with 28 U.S.C. § 1292(b).

MPT further requests that all existing scheduling deadlines in the case be vacated while the interlocutory appeal proceeds, and that the Court enter an order staying all discovery and other proceedings except for fact discovery and related proceedings relevant to (1) determining the amount of the damage to the Hospital that MPT claims was sustained because of the June 28, 2020 storm and the scope of work (including its cost) required to repair, rebuild or replace such damaged property, (2) the insureds' claims that the insurers acted in bad faith, and (3) any other issues the parties may identify as being reasonably separable from the Court's decision on the Flood sublimit issue and thus capable of proceeding during the appellate process.

Dated:  September 6, 2022

        **MEDICAL PROPERTIES TRUST, INC.**

        By its attorneys,

        */s/ Martin C. Pentz*
        Martin C. Pentz (BBO # 394050)
        Creighton K. Page (BBO # 674640)
        Natalie F. Panariello (BBO # 707579)
        Foley Hoag LLP
        Seaport West, 155 Seaport Boulevard
        Boston, Massachusetts 02210-2600
        Telephone:  617 832 1000
        Facsimile:  617 832 7000
        mpentz@foleyhoag.com
        cpage@foleyhoag.com
        npanariello@foleyhoag.com

Of counsel:

Dale Jefferson (*pro hac vice*)
David D. Disiere (*pro hac vice*)
Martin, Disiere, Jefferson & Wisdom
808 Travis, Suite 1100
Houston, TX 77002
Telephone: 713 632 1717
jefferson@mdjwlaw.com
disiere@mdjwlaw.com

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

    I hereby certify pursuant to Local Rule 7.1(a)(2) that counsel for the parties communicated in good faith to resolve or narrow the issues presented by this submission, including by exchanging drafts of it.  Zurich American Insurance Company, through counsel, does not oppose the relief requested herein.

        */s/ Martin C. Pentz*
        Martin C. Pentz (BBO # 394050)

## CERTIFICATE OF SERVICE

I, Martin C. Pentz, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on September 6, 2022.

                    */s/ Martin C. Pentz*
                    Martin C. Pentz