### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                                          )
ZURICH AMERICAN INSURANCE COMPANY,        )
    Plaintiff/Counterclaim-Defendant,   )
                                          )   Civil Action
v.                                        )   No. 21-cv-11621-PBS
                                          )
MEDICAL PROPERTIES TRUST, INC.,           )
    Defendant/Counterclaim-Plaintiff.   )
_____   )

### MEMORANDUM AND ORDER

October 19, 2022

Saris, D.J.

### INTRODUCTION

In this insurance coverage dispute, Medical Properties Trust, Inc. ("MPT") seeks recovery from Zurich American Insurance Company ("Zurich") for losses resulting from a rainstorm that damaged Norwood Hospital by water infiltrating from both the basement, upper floors, and various roofs. Zurich seeks a declaratory judgment that MPT's recovery cannot exceed the property insurance policy's $100 million sublimit applicable to "Floods". The parties disagree on whether property damage caused by water accumulation on the roof is subject to this flood sublimit. They have cross-moved for partial summary judgment. After a hearing and a flood of briefing, the Court **ALLOWS** Zurich's motion for partial summary judgment, and **DENIES** Defendant MPT's cross-motion for partial summary judgment.

1

## UNDISPUTED FACTS

The following facts are undisputed except where stated.

### I.   The Flood

MPT is the owner of Norwood Hospital Facility, which it leases to Steward Health Care System, LLC ("Steward"), the operator of the hospital.

On June 28, 2020, severe thunderstorms passed through Norwood, Massachusetts, causing sudden bursts of high winds and torrential rain that damaged Norwood Hospital. The rainwater flooded the basement of two main buildings, as well as the roofs of various buildings and the second-floor courtyard of one main building which is a roof for the floors below. Some of the buildings have "parapet roofs." For example, the roof of one main building "is a low slope roof surrounded by a parapet wall, creating a confined basin for water to be collected and discharged through roof area drains." Dkt. No. 32 at ¶¶ 7-8.

The rainwater accumulated on the roofs and second floor courtyard and infiltrated the upper floors of the hospital. The water intrusion from the roof into the upper floors never reached dirt or the natural surface of the earth, or any other ground-level surface before the water infiltrated the hospital.

### II.  The Insurance Policy

Zurich's commercial property insurance policy provides $750 million in coverage and insurance against "direct physical loss of

or damage" caused by a Covered Cause of Loss. Dkt. No. 36-1 at 14-15. The policy includes coverage for damage caused by floods under the "Described Causes of Loss" section. Id. at § 5.03.03, at 53. There is a $100 million sublimit applicable to floods. The policy defines flood:

> 7.23. Flood – A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:

> 7.23.01. The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or

> 7.23.02. Mudflow or mudslides caused by accumulation of water on or under the ground.

> 7.23.03. Flood also includes the backup of water from a sewer, drain or sump caused in whole or in part by Flood.

> 7.23.04. Flood also includes Storm Surge if shown on the declarations as part of Flood.

> Dkt. No. 36-1, § 7.23, at 69 (emphasis added).

The underlined term "surface waters", which is at the heart of this dispute, is not defined.

On August 20, 2020, Zurich wrote a preliminary review letter to MPT outlining the insurance coverage. Zurich stated that the property damage on the basement and ground level was caused by a flood, subject to the $100 million sublimit. Although Zurich further detailed that it planned to separate the damage from the basement and ground level from the damage on the first, second,

and third floors, the letter also indicated that this was an initial review and Zurich reserved "the right, if its investigation warrants, to claim that the loss or a portion of the loss asserted by [Zurich] is not . . . within the coverage of the involved policy." Dkt. No. 32-8 at 3. On December 23, 2020, Zurich followed-up on this initial coverage assessment with its final position that "substantially all of the building damages that occurred on June 28, 2020 are subject to the Flood sublimit" and clarified that the damages from the ground and basement and the upper level would not be separated. Dkt. No. 32-10 at 3.

### III. Procedural History

Zurich filed this action on October 4, 2021, seeking a declaratory judgment that (1) MPT's total recovery cannot exceed the $100 million sublimit applicable to Floods; (2) there is no coverage for MPT's Increased Cost of Coverage Claim; and (3) MPT cannot recover under the MPT Policy for systems that were not damaged in the Flood. MPT counterclaimed for money damages arising out of Zurich's failure to execute its insurance policy fully and in good faith, and for a declaratory judgment clarifying each parties' duties and obligations under the contract. A hearing on the cross-motions for summary judgment was held on August 10, 2022.

## DISCUSSION

**I.   Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue exists when, based on the evidence, a reasonable jury could resolve the issue in favor of the non-moving party." Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006). To obtain summary judgment, the moving party must demonstrate "an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). Upon that showing, the burden shifts to the nonmoving party "to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." Id.

**II.   Analysis**

**a. The meaning of "surface waters".**

The primary dispute between the parties is the meaning of the term "surface waters" in the definition of "Flood" in the insurance policy. As mentioned, the policy does not define the term "surface waters." MPT contends that "surface water" is limited to waters flowing naturally and spreading diffusely over surfaces at ground level. Zurich contends that "surface water" includes artificial surfaces above ground.

Massachusetts courts apply principles of contract interpretation to insurance policies. Citation Ins. Co. v. Gomez, 688 N.E.2d 951, 952 (Mass. 1998). The courts will "interpret all words in their usual and ordinary sense, and construe policies as a whole, without according special emphasis to any particular part over another." Surabian Realty Co. v. NGM Insurance Co., 971 N.E.2d 268, 271 (Mass. 2012) (citing Mission Ins. Co. v. U.S. Fire Ins. Co., 517 N.E.2d 463, 466 (Mass. 1988)). If a contract is ambiguous, courts "interpret it in the way most favorable to the insured." Citation Ins. Co., 688 N.E.2d at 953. Language is only ambiguous "where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." Surabian, 971 N.E.2d at 271.

Under these principles of contract interpretation, the Court concludes that Zurich has the better argument. "Flood" includes surface waters above the ground.

In this context, the usual and ordinary meaning of "surface" is "the outer boundary of the earth, in contact with the air," or "the upper boundary or top of solid ground, exposed to the air." Surface, OXFORD ENGLISH DICTIONARY, www.oed.com/view/Entry/194886. The Merriam-Webster Unabridged Dictionary similarly defines surface as the "exterior or outside of an object or body," or the "outermost or uppermost boundary." Surface, MERRIAM-WEBSTER UNABRIDGED

DICTIONARY,                                          https://unabridged.merriam-
webster.com/unabridged/surface.

    In  the  policy,  the  term  "surface  waters"  is  not  limited  to
the accumulation of water on the ground. Section 7.23.01 stands in
contrast  to  its  neighbor,  Section  7.23.02  which  covers  "mudflow  or
mudslides  caused  by  accumulation  of  water  on  or  under  the  ground."
Dkt. No. 36-1, § 7.23.02, at 69. Therefore, requiring surface water
to  reach  the  ground  is  an  implausible  reading  of  the  policy  which
makes  specific  reference  to  ground  water  in  the  next  provision.
See  Danville  Commer.  Indus.  Storage,  LLC  v.  Selective  Ins.  Co.,
442  F.  Supp.  3d  921,  927  (W.D.  Va.  2020)  (declining  to  limit  the
definition  of  "surface  water"  to  water  on  the  ground  because  "this
would  make  the  term  'ground'  superfluous  in  the  [policy],  and
contracts  are  presumed  not  to  use  superfluous  terms.").

    Fidelity  Co-operative  Bank  v.  Nova  Casualty  Co.,  726  F.3d  31
(1st  Cir.  2013)  is  spot  on.  There  the  First  Circuit  held  that
pooled water on the parapet roof of a five-story apartment building
was surface water within the meaning of the insurance policy. Id.
at  39;  Dkt.  No.  33-2  at  17  (explaining  that  the  engineering
consultant  examined  the  property  and  observed  that  "the  building's
nearly  flat  roof  is  pitched  to  drain  away  from  the  perimeter
parapet  toward  a  central  point  in  the  roof  near  the  two  skylights"
and describing the building's parapet as continuous).

The First Circuit concluded that "damage resulting from water that flooded into properties after accumulating on artificial surfaces does not lose its character as 'surface water' merely because it flowed along the artificial surface and seeped into or continued to flow onto the property." Id. at 40. In reaching this conclusion, the First Circuit applied Massachusetts law. Id.; see Boazova v. Safety Insurance Co., 968 N.E.2d 385, 392 (Mass. 2012), (quoting DeSanctis v. Lynn Water & Sewage Comm'n, 666 N.E.2d 1292, 1295 n.6 (1996)), Surabian Realty Co. v. NGM Ins. Co., 462 Mass. 715, 718-19 (2012) ("[R]ain that collects on a paved surface, such as a parking lot, retains its character as surface water . . . ")). See also Restatement (Second) of Torts § 846 (Am. L. Inst. 1979) (defining surface was as "water from rain, melting snow, springs, or seepage, or detached from subsiding floods, that lies or flows on the surface of the earth but does not form a part of a watercourse or lake.")).

MPT argues this court should not follow Fidelity for two reasons. First in its view, the First Circuit misapplied state law. I disagree. In Boazova, water accumulated on the policyholder's wood sill between her patio and rear wall due to the construction of a concrete, raised patio, causing significant deterioration. 968 N.E. 2d at 388. The patio was "built along the rear wall of the house at a grade that was higher than the home's foundation." Id. at 387-88. In interpreting an exclusion to the

policy, the court held that the damage to the home was not covered because it was caused by "surface water": "the water that accumulated thereon simply flowed along the patio and seeped into the house. The mere migration of water from the patio into the wooden sill, floor joists, and wall studs did not change its essential character as 'surface water.'" Id. at 393.

To support its argument that surface water must be ground water, MPT emphasizes the SJC's description of "surface water" as "waters from rain, melting snow, springs, or seepages, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." Id. at 392 (citing DeSantis v. Lynn Water & Sewer Comm'n, 666 N.E.2d 1292, 1295 n.6 (Mass. 1996)). The reliance on the SJC's use of the word "ground" is misplaced because in Boazova the SJC found that surface water includes waters on raised artificial surfaces like the raised patio or paved parking lots, not just water on the ground.[1]

---

[1] Other courts that have addressed the meaning of surface water as it pertains to artificial, elevated surfaces have come to differing conclusions. Compare Louisiana Mid-Continent Oil & Gas Ass'n v. Peerless Ins. Co., No. 17-01098-BAJ-EWD, 2019 WL 1271007, at *2 (M.D. La. Mar. 19, 2019) (concluding that in an all-risk policy with a surface water exclusion provision, the water on a roof was not surface water because "surface water" was "listed among a group of terms that generally refer to the accumulation of water on the ground versus water on the roof of a building"), with Danville Com. Indus. Storage, LLC v. Selective Ins. Co. of South Carolina, 442 F. Supp. 3d 921, 927 (W.D. Va. 2020) (stating that "the majority of [courts across the country] to have addressed this question [of the definition of surface water] have concluded that 'surface water' includes water on a roof,"

MPT also argues Zurich's definition fails because the surface waters must be "naturally spreading" and "diffused over the surface of the ground" without following any "defined course or channel." Dkt. No. 49 at 3. The term "defined course or channel" appears in an insurance treatise referenced in Boazova. 968 N.E. 2d at 392; see 5 J.A. Appleman & J. Appleman, Insurance Law and Practice § 3145, at 463 (1970). In MPT's view, waters on parapet roofs contained within the fully enclosed surfaces on the roofs do not meet this definition because the Norwood roofs do not allow rain-flow water to flow naturally off the roof in a diffuse and unconstrained fashion. Rather, the water is diverted toward roof drains that send water into the town storm water system. This argument fails because the SJC did not define "surface waters" to exclude accumulation of surface waters that are "constrained" before flowing on the ground. Indeed, in Boazova, the SJC concluded the rainwater on a raised patio was surface waters even though the patio had a cant which directed water away from the house. Id.

Second, MPT asserts that the language Fidelity uses is "non-precedential dicta regarding an issue that was not considered by the parties." Dkt. No. 38 at 14. Dictum consists of "observations relevant, but not essential, to the determination of the legal

---

and finding that case law persuasive, holding "that the plain meaning of 'surface water' in the Policy includes water that ponds on a roof").

questions then before the court. Dictum constitutes neither the law of the case nor the stuff of binding precedent." Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992). But the First Circuit reached the issue of surface water after the parties briefed the definition and the question whether the issue was properly preserved for the court. See Fidelity, 726 F.3d at 39 (explaining that "[o]ne of the issues in front of the First Circuit was 'whether the district court erred in deeming the water damage the result of 'surface water' not covered under the Policy.'"). The court concluded that the issue was not waived on appeal and upheld the district court's finding that the ponded water on the roof was surface water. Fidelity, 726 F.3d at 39-40. Its ruling was not dictum.

> **b. Inundation.**

MPT makes two last ditch, poorly developed arguments. First it argues that even if the water on the roof is surface water, the Flood sublimit does not apply because Zurich did not meet its burden of showing that there was an inundation of a normally dry structure. However, the undisputed facts show an inundation of the roof.

The insurance policy states in relevant part that a flood is a "temporary condition of partial or complete inundation of normally dry land areas or structure(s)" caused by a listed condition, such as the rapid accumulation or runoff of surface

waters, a mudflow, or mudslide. Dkt. No. 36-1, § 7.23, at 69.
Merriam-Webster Unabridged Dictionary defines inundate as "to
flood with water" or "to flood as if with water." Inundate, MERRIAM-
WEBSTER UNABRIDGED DICTIONARY, https://unabridged.merriam-
webster.com/unabridged/inundate; Inundate, OXFORD ENGLISH DICTIONARY,
www.oed.com/view/Entry/98846 (defining inundate as "to overspread
with a flood of water," "to overflow," or "to flood."). Rainwater
that ponds on a roof before it floods a building can be an
"inundation of a normally dry land areas" for purposes of extending
coverage under the flood definition in this policy. Fidelity, 726
F.3d at 40.

Second, MPT seems to argue that if the Court were to find
that water inundating a roof is a flood, then the practical effect
would be to impose a broad water exclusion. Zurich does not take
this position. While the parties seem to squabble about "storm"
damage, the term does not appear as an identified cause of loss in
the all-risk insurance policy.

<u>**ORDER**</u>

For the reasons stated above, the Court **<u>ALLOWS</u>** Plaintiff's Zurich's Motion for Partial Summary Judgment (Dkt. No. 30) and **<u>DENIES</u>** Defendant MPT's Cross-Motion for Partial Summary Judgment (Dkt. No. 31).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge